# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6080 | **DATE** | 9/1/2004 |
| **CASE TITLE** | RLJCS Enterprises, Inc. vs. Professional Benefit Trust, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for a partial stay of proceedings [23-1] is Denied. Defendants may have until September 24, 2004 to answer or otherwise plead to the complaint. Status hearing set for September 8, 2004 to discuss with counsel how best to expedite an early resolution of the legal questions involved in the stock ownership issue.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RLJCS ENTERPRISES, INC., et al.,  )
                                  )
       Plaintiffs,                )
                                  )
v.                                )   No. 03 C 6080
                                  )
PROFESSIONAL BENEFIT TRUST, INC., )
et al.,                           )
                                  )
       Defendants.                )

DOCKETED SEP 2 2004

## MEMORANDUM OPINION

Before the court is defendants' motion for partial stay of proceedings. For the reasons set forth below, the motion is denied.

## BACKGROUND

The issues raised by the present motion relate only to case management, and in no way implicate the merits, so a detailed recital of the facts is unnecessary. A brief summary is in order, however. Plaintiffs are former employer and employee participants in a multiple-employer benefits trust ("the Trust"). The employers participated in the Trust for the sole purpose of providing death benefits for their participating employees. These death benefits were funded by life insurance policies that were purchased by the Trust with contributions made by the employers. The Trust was designed to be a qualifying trust under section 419A(f)(6) of the



Internal Revenue Code, which allows employers to realize a tax deduction for contributions made to certain employee benefit plans. See I.R.C. § 419A(f)(6).

At the heart of this dispute are life insurance policies purchased by the Trust from Canada Life and Sun Life on behalf of participating employees. When these policies were issued, Canada Life and Sun Life were both mutual insurance companies, or, "insurer[s] whose policyholders are its owners, as opposed to a stock insurance company owned by outside shareholders." BLACK'S LAW DICTIONARY 1041 (7th ed. 1999). However, Canada Life and Sun Life, in 1999 and 2000 respectively, "demutualized," which is "[t]he process of converting a mutual insurance company (which is owned by its policyholders) to a stock insurance company (which is owned by outside shareholders). . . ." Id. at 445.

As a result of these demutualizations, the Trust received shares of Canada Life and Sun Life stock (together, "the Demutualized Stock").[1] Then, in or around September 2000, the trustee of the Trust liquidated the Demutualized Stock for approximately $5,000,000, which the Trust has retained. Effective

---

[1] The parties dispute whether the shares of Demutualized Stock were "attributable" to any particular insurance policy or participating employer or employee. Compare Sec. Am. Compl., p. 26, ¶ 4.11 ("Canada Life distributed approximately 116,626 shares of Canada Life Stock to the Trust (rather than directly to the Plaintiffs) attributable to the Canada Life insurance policies . . . [listing insured employees and corresponding share distribution]") with Defs.' Counterclaim, p. 13, ¶ 62 ("The Demutualized Stock . . . was not attributed or attributable to any particular insurance policy or any particular Sponsoring Employer or Participant Employee.")

December 31, 2002, plaintiffs terminated their participation in the Trust. Upon their withdrawal, the Trust distributed to the participating employees their respective Canada Life and Sun Life insurance policies and their *pro rata* share of other related Trust assets. The distribution, however, did not include any of the sales proceeds from the Demutualized Stock.

This action followed. Plaintiffs have brought a 73-page, sixteen-count complaint alleging violations of civil RICO, 18 U.S.C. §§ 1961, *et seq.*, and ERISA, 29 U.S.C. §§ 1001, *et seq.*, as well as various common law breach of contract, fiduciary duty and fraud-based claims. The crux of the complaint is that the participating employees had an ownership interest in the Demutualized Stock and that defendants – the Trust and several related entities and individuals – unlawfully deprived the employees of that interest when their *pro rata* shares of the sales proceeds were not included in their distributions.

Defendants have not answered or otherwise pled to the complaint. They have instead submitted a counterclaim seeking a declaratory judgment that the Trust is the proper owner of the Demutualized Stock and related sales proceeds.[2] Along with their counterclaim, defendants have filed a motion to stay all

---

[2]Defendants' position is that the sales proceeds are properly treated as "experience gains" held in the Trust for the benefit of all current participating employers and employees, and that such treatment is necessary to preserve the Trust's status under I.R.C. § 419A(f)(6).

proceedings on the complaint pending resolution of the counterclaim.

**DISCUSSION**

District courts have substantial discretion in administering their dockets. See Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002). This includes the inherent power to stay a case, or a part thereof, when the interests of justice so require. See Clinton v. Jones, 520 U.S. 681, 683, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). However, the granting of a stay is the exception, not the rule, and the party seeking the stay has the burden of demonstrating it is necessary.[3]

Defendants' argument in support of their motion is straightforward: because much of the complaint hinges on the narrow question of ownership of the Demutualized Stock, the court should resolve that issue before the parties wade into protracted discovery and motion practice on plaintiffs' complicated RICO and ERISA claims, which, depending on the answer to the stock ownership

---

[3]Both sides cite to Landis v. North American Co., 299 U.S. 248, 253-54, 57 S.Ct. 163, 81 L.Ed. 153 (1936) as providing the dispositive factors in evaluating whether a stay is appropriate – namely, whether the stay will (i) foster efficient judicial administration, (ii) conserve judicial resources, (iii) promote fairness for all parties, and (iv) seek a comprehensive disposition of the litigation. Yet Landis, and all of the other cases proffered by the parties, involve the often complicated issue of abstention when there is a parallel proceeding *pending in another forum*. Here, we are presented with a simple issue of docket management in a single case. And while the principles applicable in abstention cases – efficiency, economy and fairness – are certainly relevant here, we are not bound by any formulaic test in determining whether to grant or deny defendants' requested stay.

query, may prove to be unnecessary.

We agree with defendants that the question of stock ownership may be a pivotal threshold inquiry. We do not agree, however, that a stay of plaintiffs' claims in favor of defendants' counterclaim is required for an expeditious resolution of that question. Defendants assume that proceeding with the case in the normal course will necessarily involve "complex, expensive and lengthy discovery" lasting "many months, if not years" before the court can reach the question of stock ownership. Not so. First of all, the complaint has already put the issue in play; plaintiffs cannot prevail on many of their claims unless they prove ownership of the stock. So if the issue is a simple question of law, as defendants maintain, then no or only minimal discovery is necessary and defendants can promptly move for an adjudication. See Fed.R.Civ.P. 12(c); Fed.R.Civ.P. 56(b) ("A party against whom a claim . . . is asserted . . . may, *at any time*, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.") (emphasis added). In any event, proceeding with the counterclaim will involve another layer of pleadings, at least one round of motions, and as defendants themselves acknowledge, the possibility of discovery. See Defs.' Reply, p. 8 (issue may require "limited expert testimony"). In sum, it is not at all clear that litigating defendants' counterclaim provides the more efficient avenue to resolution of

this case, or parts thereof, and therefore a stay is not warranted.[4]

Although we deny defendants' motion for a stay, we do recognize the merit in placing the stock ownership question on the front burner. Therefore, the filing of any dispositive motion (as to any or all claims) limited to the issue of ownership of the Demutualized Stock will not foreclose the opportunity to present a second motion at the close of discovery.

## CONCLUSION

For the foregoing reasons, defendants' motion for a partial

---

[4] Defendants' pleading strategy raises a number of other issues which need not be decided in light of our ruling but are nonetheless worth bringing to the parties' attention. First, is defendants' "counterclaim" really a counterclaim? See, e.g., Rayman v. Peoples Savings Corporation, 735 F.Supp. 842, 851-53 (N.D. Ill. 1990) ("counterclaim" seeking no affirmative relief other than a declaratory judgment that would have defeated plaintiff's claim added nothing new to the case by way of a separate claim and therefore was deemed an affirmative defense); see also Fed.R.Civ.P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim . . . the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."); Tenneco v. Saxony Bar & Tube, Inc., 776 F.2d 1375, 1379 (7th Cir. 1985) ("The label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label."). Second, may a defendant even file a counterclaim without an answer? Rule 13, governing counterclaims, implies that a counterclaim must be part of a "pleading." See Fed.R.Civ.P. 13(b) ("*A pleading shall state as a counterclaim* any claim which at the time of serving the pleading the pleader has against any opposing party. . . .") (emphasis added). Rule 7 defines "pleadings" as (1) a complaint, (2) *an answer*, (3) a reply to a counterclaim, (4) an answer to a cross-claim, (5) a third-party complaint, or (6) a third-party answer. See Fed.R.Civ.P. 7(a) (emphasis added). Absent from this list is a counterclaim. In addition, Rule 12 marks the time within which to file a reply to a counterclaim from the date of service of the *answer*. See Fed.R.Civ.P. 12(a)(2) ("The plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer. . . ."). Taken together, these Rules do not appear to contemplate the filing of a counterclaim independent of an answer.

stay of the proceedings is denied. Defendants may have until September 24, 2004 to answer or otherwise plead to the complaint. A status hearing is set for September 8, 2004 to discuss with counsel how best to expedite an early resolution of the legal questions involved in the stock ownership issue.

DATE: September 1, 2004

ENTER: _____
John F. Grady, United States District Judge