**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


RLJCS ENTERPRISES, INC., et al.,   )
                                )
        Plaintiffs,         )
                                )
        v.                 )      No. 03 C 6080
                                )
PROFESSIONAL BENEFIT TRUST, INC.,  )
et al.,                          )
                                )
        Defendants.        )


**MEMORANDUM OPINION**

Before the court is defendants' motion to strike plaintiffs' expert reports. For the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

We will repeat here a brief summary of the alleged facts from an earlier opinion:

> Plaintiffs are former employer and employee participants in a multiple-employer benefits trust ("the Trust"). The employers participated in the Trust for the sole purpose of providing death benefits for their participating employees. These death benefits were funded by life insurance policies that were purchased by the Trust with contributions made by the employers. The Trust was designed to be a qualifying trust under section 419A(f)(6) of the Internal Revenue Code, which allows employers to realize a tax deduction for contributions made to certain employee benefit plans. See I.R.C. § 419A(f)(6).
>
> At the heart of this dispute are life

-2-

insurance policies purchased by the Trust from Canada Life and Sun Life on behalf of participating employees. When these policies were issued, Canada Life and Sun Life were both mutual insurance companies, or, "insurer[s] whose policyholders are its owners, as opposed to a stock insurance company owned by outside shareholders." BLACK'S LAW DICTIONARY 1041 (7th ed. 1999). However, Canada Life and Sun Life, in 1999 and 2000 respectively, "demutualized," which is "[t]he process of converting a mutual insurance company (which is owned by its policyholders) to a stock insurance company (which is owned by outside shareholders). . . ." Id. at 445.

As a result of these demutualizations, the Trust received shares of Canada Life and Sun Life stock (together, "the Demutualized Stock").[1] Then, in or around September 2000, the trustee of the Trust liquidated the Demutualized Stock for approximately $5,000,000, which the Trust has retained. Effective December 31, 2002, plaintiffs terminated their participation in the Trust. Upon their withdrawal, the Trust distributed to the participating employees their respective Canada Life and Sun Life insurance policies and their *pro rata* share of other related Trust assets. The distribution, however, did not include any of the sales proceeds from the Demutualized Stock.

RLJCS Enterprises, Inc. v. Professional Benefit Trust, Inc., No. 03

C 6080, 2004 WL 2033067, at *1 (N.D. Ill. Sept. 2, 2004).

---

[1] The parties dispute whether the shares of Demutualized Stock were "attributable" to any particular insurance policy or participating employer or employee. Compare Sec. Am. Compl., p. 26, ¶ 4.11 ("Canada Life distributed approximately 116,626 shares of Canada Life Stock to the Trust (rather than directly to the Plaintiffs) attributable to the Canada Life insurance policies . . . [listing insured employees and corresponding share distribution]") with Defs.' Counterclaim, p. 13, ¶ 62 ("The Demutualized Stock . . . was not attributed or attributable to any particular insurance policy or any particular Sponsoring Employer or Participant Employee.")

On these alleged facts, plaintiffs filed a 73-page, sixteen count complaint against the Trust and several related entities and individuals alleging violations of RICO, 18 U.S.C. §§ 1961, *et seq.,* and ERISA, 29 U.S.C. §§ 1001, *et seq.,* as well as various state law breach of contract, fiduciary duty and fraud-based claims. The nub of the complaint is that the participating employees had an ownership interest in the Demutualized Stock and that defendants unlawfully deprived the employees of that interest when their *pro rata* shares of the sales proceeds were not included in their termination distributions.

Defendants filed a counterclaim seeking a declaratory judgment that the Trust is the proper owner of the Demutualized Stock and related sales proceeds.[2] Along with the counterclaim, defendants filed a motion to stay all proceedings on the complaint pending decision on the counterclaim. Although we denied defendants' motion, we agreed with its premise – since much (if not all) of the complaint hinges on the question of stock ownership, isolating that issue for an early resolution was the most efficient way to proceed with the case. See <u>RLJCS Enterprises</u>, 2004 WL 2033067, at *2. So, on September 15, 2004, the court ordered the parties to "conduct limited document and deposition discovery by

---

[2]More precisely, defendants' position is that the sales proceeds are properly treated as "experience gains" held in the Trust for the benefit of *all* current participating employers and employees, and that such treatment is necessary to preserve the Trust's status under § 419A(f)(6).

November 15, 2004 on the question of stock ownership with a view to preparing a summary judgment motion on that issue." (Min. Order, Sept. 15, 2004.) After the court granted plaintiffs' requests to extend the discovery deadline until December 31, 2004, the parties filed cross-motions for summary judgment on the stock ownership question on March 7, 2005. Plaintiffs' motion relies on two expert witness reports. Defendants have filed a motion to strike the expert reports, and we suspended briefing on the summary judgment motions pending a ruling on the motion.

## DISCUSSION

Defendants claim that the plaintiffs' expert reports should be stricken for two reasons: the reports were not timely disclosed and, alternatively, the reports contain improper opinions on questions of law.

We first take up the issue of timeliness. Defendants served interrogatories on October 7, 2004, requesting that plaintiffs "[i]dentify each person whom you expect to use as an expert witness, whether by testimony or affidavit, on the issues of ownership, sale or distribution of the Demutualized Stock. . . ." (Defs.' First Interr., No. 2.) Plaintiffs responded on November 8, 2004 as follows:

> The Plaintiffs object to the this [sic] Interrogatory to the extent it calls for the disclosure of information (and timing of such disclosure) not required by the Federal Rules of Civil Procedure. The Plaintiffs intend to comply with Fed.R.Civ.P. 26(a)(2). Without

waiving this objection, the Plaintiffs state
that they intend to use the following persons
as expert witnesses on the issues of
ownership, sale or distribution of the
Demutualized Stock:

Fred Reish, Esq.
Bruce Ashton, Esq.
Reish, Luftman, Reicher and Cohen
11755 Wilshire Blvd. Fl. 10
Los Angeles, CA 90025-1539
(310) 478-5656

All of the above-requested information will be
contained in the experts' report once it is
prepared.

(Pls.' Resp. to Interr., No. 2.)  Defendants also served a request

for documents on plaintiffs on October 7, 2004, seeking "any

reports" from "anyone whom any Plaintiff expects to use as an

expert witness on the issues of stock ownership, sale or

distribution of the Demutualized Stock." (Defs.' Doc. Req., No.

16.)  Plaintiffs' response of November 8, 2004 stated:

The Plaintiffs object to this Document Request
to the extent it seeks reports provided by
consulting experts.  The Plaintiffs also
object to this Document Request to the extent
that it requests the disclosure of information
(and the timing of such disclosures) not
required by the Federal Rules of Civil
Procedure.  To date, no such reports have been
rendered by the Plaintiffs' testifying
experts.  The Plaintiffs will comply with the
Federal Rules of Civil Procedure.  The
Plaintiffs will supplement at the appropriate
time.

(Pls.' Resp. Doc. Requests, No. 16.)  Discovery closed on December

31, 2004 without plaintiffs having amended any of their discovery

responses.  Then, on March 7, 2005, plaintiffs filed with their

summary judgment motion an amended interrogatory response that identified William L. Raby as an additional expert and stated that his report (the "Raby Report") and a report prepared by Reish and Ashton (the "R&A Report") were attached.

Defendants' argument is simple: discovery closed on December 31, 2004 and therefore the reports tendered on March 7, 2005 were untimely. Plaintiffs counter that their disclosures were timely under Rule 26(a)(2), which provides that:

> [D]isclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial.

Fed. R. Civ. P. 26(a)(2)(C). According to plaintiffs, the court did not set a specific deadline for disclosure of experts, so the 90 day default rule applies and since no trial date has been set, their disclosures are timely. As plaintiffs would have it, then, our order closing discovery on December 31, 2004 referred only to fact discovery. This makes no sense. As noted above, we set a deadline for discovery on the question of stock ownership "with a view to preparing a summary judgment motion on that issue." (Min. Order, Sept. 15, 2004.) Plaintiffs surely knew that this deadline applied to *all* discovery on the issue – fact and witness – and that any expert sought to be relied on in support of their summary judgment motion needed to be disclosed *during discovery* to allow

defendants time to depose the expert, retain a rebuttal expert or conduct other related discovery. To allow plaintiffs to spring these reports on defendants two months after the close of discovery would render our order meaningless. The reports were untimely.

Even if plaintiffs could somehow demonstrate that their conduct was the result of an honest misunderstanding, see Salgado v. General Motors, 150 F.3d 735, 742 (7th Cir. 1998) (tardy discovery response may be allowed under Rule 37(c)(1) if it was justified), there is another reason for striking the R&A Report in its entirety and all but a small portion of the Raby Report. Federal Rule of Evidence 702 provides: "If scientific, technical or other specialized knowledge will *assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702 (emphasis added). Therefore, Rule 702 allows a qualified expert to give both factual and opinion testimony only if the testimony will help in understanding the factual issues in the case. A well-settled corollary is that the Rule does not contemplate expert assistance on legal questions. See United States v. Sinclair, 74 F.3d 753, 757-58 n. 1 (7th Cir. 1996) (Rules "702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case."); Hugh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is

in accord with other circuits in requiring exclusion of expert
testimony that expresses a legal conclusion."); <u>Aquilar v. Int'l
Longshoremen's Union Local #10</u>, 966 F.2d 443, 447 (9th Cir. 1992)
("matters of law [are] for the court's determination . . . . [and]
they were inappropriate subjects for expert testimony.").[3]  This
prohibition is not limited to expert testimony on pure legal
matters, but also on mixed questions of law and fact, *i.e.*,
application of law to facts.  <u>See</u> <u>Haley v. Gross</u>, 86 F.3d 630, 645
(7th Cir. 1996) (expert may not "improperly tell[] the jury why [a
party's] conduct was illegal"); <u>United States v. Baskes</u>, 649 F.2d
471, 479 (7th Cir. 1980) ("[W]itnesses' opinions as to the legal
implications of conduct are [not] admissible."); <u>Central Die
Casting and Manufacturing Co., Inc. v. Tokheim Corp.</u>, No. 93 C
7692, 1998 U.S. Dist. LEXIS 18472, at *27-28 (N.D. Ill. Nov. 19,
1998) ("the interpretation of federal regulations is in all
instances for the district court" and an "expert should not be
allowed to opine as to whether [a party] violated a statute or
regulation because he would be determining a question of law.")

    The R&A Report was prepared by two practicing attorneys, C.
Frederick Reish and Bruce L. Ashton.  The report indicates that
Reish has been "a pension and employee benefits attorney for over

---

[3]An exception inapplicable here is that courts are permitted to
hear expert testimony on foreign law.  <u>See</u> Fed. R. Civ. P. 44.1 ("The
court, in determining foreign law, may consider any relevant material
or source, including testimony, whether or not submitted by a party or
admissible under the Federal Rules of Evidence.")

30 years," and that Ashton has been "a practicing attorney for over 30 years, focusing on pension and employee benefits matters for approximately the last 20 years." (R&A Report, p. 1.) Both attorneys are well-published in their field. (Id., Ex. 2.)

The R&A Report is prefaced with a statement of its scope and conclusion:

> The purpose of this report is to provide our analysis of whether the Plaintiffs in this action are entitled to the demutualized stock received by the Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust (the "PBT Trust") in late 1999 and early 2000. For the reasons set out in this report, it is our opinion that the Plaintiffs are entitled to the demutualized stock under the terms of the PBT Trust document, and it was a breach of fiduciary duty and a breach of contract for the Defendants to retain those shares (and the proceeds thereof) at the time the Plaintiffs withdrew from the Trust.

(Id., p 3.) The report presents an opinion, relying on an IRS Private Letter Ruling and on the United States Tax Court's decision in Booth v. Commissioner, 108 T.C. 524 (1997), that the Trust failed to meet the requirements of 419A(f)(6). This conclusion is offered in support of the argument in plaintiffs' summary judgment papers that if the Trust was not even eligible for the favorable tax treatment under § 419A(f)(6), then distribution of the Demutualized Stock proceeds could not have, as defendants contend, jeopardized the Trust's status under the Code. The report then

analyzes ERISA, Department of Labor regulations, and Trust documents and opines that defendants breached their fiduciary duties under ERISA.

The report consists entirely of improper legal argument. It is an advocacy piece, written by attorneys, and expressly addressed to the ultimate legal question before the court: "whether the Plaintiffs in this action are entitled to the demutualized stock received by the [Trust]. . . ." (R&A Report, p. 3.) In addition, the report presents nothing that will assist the court in evaluating any facts in the case.

The Raby Report is more of the same. It was prepared by William M. Raby, an accounting professor at Arizona State University and a "consultant for tax and compensation planning and tax controversy and litigation matters." (Raby Report, Ex. A.) The report purports to opine on "when the demutualization of a life insurance company would leave a policyholder of such company in the same position after the demutualization as before." (Id., p. 1.) Drawing on Raby's interpretation of sections of the Internal Revenue Code, caselaw and IRS Private Letter Rulings, the report concludes that since the participating employees "owned" the policy prior to demutualization, they also had rights to the stock attributable to the policy through the demutualization process. (Id., p. 1, 6-7.) Whether statutes, caselaw or other authority compel the conclusion that the employees had rights in the stock

is, again, a legal question for the court to decide and not a proper subject for an expert report. There is, however, a portion of the report that we do find appropriate for expert treatment and that is the general discussion of "demutualization" which appears under the heading "Demutualization of a Life Insurance Company" on pages 1-3. The demutualizations of Canada Life and Sun Life were significant *factual* events in this case, and an explanation of the demutualization process may be helpful to the court.

Except for this demutualization discussion, the reports contain nothing more than legal analysis and conclusions that are properly presented, if anywhere, in counsel's legal memoranda. To permit expert analysis of the law would usurp the province of the court. Moreover, as a practical matter, presenting legal argument in both summary judgment briefs and in expert reports is redundant and confusing. Plaintiffs are of course free to retain their attorney-experts as co-counsel, but dressing up their legal arguments as "expert reports" does not make them any more persuasive and is plainly disallowed under the Federal Rules of Evidence. Perhaps it goes without saying, but our ruling today is not intended as a comment on whether the arguments in the reports are correct; we simply hold that they are not properly advanced in an expert report. Accordingly, with the exception of the general discussion of "demutualization" in the Raby Report, the reports are stricken.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike plaintiffs' expert reports [70-1] is granted in all respects except for the discussion under the heading "Demutualization of a Life Insurance Company" on pages 1-3 of the Raby Report. Cross-responses to the motions for summary judgment are due on December 8, 2005 and cross-replies will be due on December 29, 2005.


DATE:   November 8, 2005


ENTER:   _____

John F. Grady, United States District Judge